Thank you, and good morning, Deputy Attorney General on behalf of the Department of Education in this matter. This is an appeal involving the Individuals with Disabilities Education Act. However, unlike your standard whiteboard appeal, it is distinguished because there are two issues which Appellant has raised at this time. The two specific issues are whether or not the District Court misapplied Van Dyne v. Baker School District when the Court found that the Department materially failed to implement Sean M.'s IEP and thus denied him a free and appropriate public education. The second issue is whether or not the Federal Court also erred when it ruled that Sean M. was entitled to compensatory education. For the period of time, Sean M. did not receive any educational services due to the dispute between the parties concerning the location of the school Sean M. would attend. Now, the primary issue of whether or not a free and appropriate public education via the school that the IEP team came up with, which was Kainalu Elementary School, is not being disputed at this time. The Administrative Hearings Officer found that the Department did offer a FAPE, a free and appropriate public education. All right, it offered a FAPE. What evidence is there that the DOE tried to implement the IEP? Yes. In the record. The evidence... You argue that in your brief, but you point to no evidence in the record, so I'm just asking you to tell me what specific evidence there is that the DOE tried to implement the IEP. Not just that it's an earlier operator. The DOE met with a parent on several occasions, obviously the first being June 10th of 2008, the initial IEP prior to... That was in developing the IEP. That is developing the IEP. So I'm asking you what evidence is there that the DOE tried to implement the IEP. There was also the follow-up IEP of September 15th, 2008. Right, that's developing the IEP. So they met and they developed the IEP. Did the DOE send transportation to the parent's home to take the child to the school? The DOE attempted... There's evidence in the record that the mother didn't drive, right? And there's evidence in the record that she used to walk Sean M. to school. That is correct. Okay. So we know the mother didn't drive, we know she has an older... In the record, there's an older child that's at the first school, right? That is correct. The IEP's developed, and there's evidence in the record of the development of the IEP and the end result of the, I guess, the last IEP, was that Sean M. was supposed to go to a different school than his older brother, right? That is correct. And that's all in the record. Okay, so that's the IEP. It's offered. The mother can't drive. So did the DOE do anything to help the mother get Sean M. to the second school? And is that in the record? You are doing your research, but is there in the record that shows that? If I may respond, Your Honor, my understanding is what is in the record is that it was clear at the time when the IEP was developed that that mother did not want Sean M. to attend the school that was being recommended. Right. She didn't want that. That wasn't her. That's clear. She didn't want that. I'm not sure any parent likes the prospect of having to send their two children to two different schools, especially a parent that doesn't drive and is already having a difficult time walking the kids to school, right? That's correct. Okay. So she didn't want it. I don't see how Van Dine really helps you because Van Dine stands for the proposition that the school district must implement the IEP and minor deviations from the exact IEP that is offered are not going to be held to be a violation of the act, right? Isn't that what Van Dine stands for? That is correct. That was the amended opinion, right? That is correct. Okay. So here, what evidence is there that there was any implementation at all? If I may respond, in this particular case, the rationale behind Van Dine was misapplied because of the fact that it became impossible in the first place for the Department of Education to actually implement the IEP itself because Mother, on her own volition, refused to have her child, Sean M., attend Kainalu Elementary School in the first place. I wish there was some evidence in the record that showed that the school district actually tried to implement it because I just don't, I mean, it makes it a harder case that there's no evidence of that. I understand, Your Honor, and the concern that I see is that if one were to follow the lower court's reasoning, then essentially any parent of an eligible IDEA student could obtain and order that the department would not be in compliance with the IDEA and thereby denied his or her child a fate by simply keeping his or her child at home. And that's what this case is about. The state was unable to perform its duties to implement the IEP. I guess my questions are a kind of follow-up to my colleagues because I guess it seems to me that one needs to look at what the evidence is in the record. And we know that the fate was developed, and we know that there was a plan already in place. What I guess she was indicating was, what evidence do you have that, one way or another, the school tried to implement? My question is a little more nuanced than that. What evidence do you have in the record that the district was ready to implement? I believe in the record itself, if I may speak, there is evidence to show that services had been procured. There are, I think, purchase of services documentation that show that services for whatever was being offered in the IEP was already being procured. So in the event that the student was going to come, let's say, the next day to attend the school, that all the services, including transportation services in particular, would be provided to the student. So the record documents that all of the things necessary to do what the plan had suggested to do were already procured by the school district and stood ready to provide them. That is correct. Is there any evidence in the record that the district was willing to provide transportation? I believe the evidence... Is there evidence in the record that the school district had already procured the transportation? On the issue, I don't believe in my review of the evidence there is any documentation to show whether or not, in fact, the transportation was procured. However, I know that the schools that were involved were willing and able to procure those services at a moment's notice so that the student would indeed be able to fully participate in the IEP. What evidence do I look at to see that? I believe there was extensive testimony in the administrative hearing process. All right. When you sit down, would you mind pointing to the record where there is evidence of the transportation services being offered to the mother or standing ready to be offered to the mother? I'd like you to give me some record citations. Okay. Also, the district court said that the issue... In footnote 4, the opinion says, Of course, DOE claims that the reason they were unable to provide services was because of mother's ultimate disagreement with the placement of Sean Emmett Kainalu. Nevertheless, because that issue was not properly raised on appeal, the court declines to address the substantive provisions of the IEP, instead focusing on the lack of implementation. Isn't that the argument you're making to us? The argument that I'm making is that, well, it was not addressed by parent on appeal. And so, first of all, the district court... DOE didn't make that argument on appeal, according to the district court. Is the district court wrong? Oh, I believe, if I'm not mistaken, Your Honor, the district court was referring to the parent and not appealing that issue. And so, in that respect, the district court did not rule on... Well, I understand that... Okay, I understand that the administrative decision was against Sean Emmett and his family, right? That is correct. So Sean Emmett appealed and raised the lack of implementation on appeal. Correct? Am I right? That is somewhat correct, as far as the issues that were raised on appeal. Right, and then DOE failed, according to the district court. I just want to know if the district court's right or wrong. According to the district court, the DOE failed to argue to it that they were unable to provide services because of mother's ultimate disagreement with the placement of Sean Emmett. That's what the district court says. Is the district court right or wrong? That is correct. With respect to the briefing, in the district court level, the state did not, I guess, address that or respond to that issue because it was... If it wasn't raised in district court, how can it be raised to us? That's what I'm asking. If I may, Your Honor, the issue is because it was not even originally addressed in the request for due process hearing. The issue was not addressed in the request for due process hearing in the first place, thereby precluding parent from now addressing for the first time this issue on appeal. But it's the DOE that's... The district court says the DOE... I'm not going to belabor this. I'm going to assume the district court was correct, if you can't explain this to me. Basically, what the state's argument in front of this court is, is because of the fact that the parent did not properly raise the issue of the failure to implement the IEP at the administrative hearings level. That is why that matter was not addressed in hearing before the hearings officer. Nonetheless, the federal court found in favor of parent, despite the fact that it was not originally raised on the administrative level, and that is one of the reasons why the state has appealed that decision, because it was not, first of all, properly raised at the onset in the administrative hearings level. And that's why it was not addressed in answer form, because it was not, to begin with, an issue before the hearings officer when the request was made. Do you want to save the rest of your time, and maybe you can look through the record and give a citations response to both my questions and Judge Smith's? That is fine. If I may, just for a couple of seconds, the other issue, just to make certain that I made that clear, the other issue that was not raised also at the administrative hearings level was that, was on the issue of compensatory education. So that was also an issue that was not raised by parent at the due process level. However, it was raised by the district court. And once again, that is now also an issue that is before this court. All right. Thank you, counsel. Good morning, Your Honors. May it please the court, I am May Nakamoto, and with me is lead counsel on the case for mother as well as the student, Sean M. Irene Bassey. She would have liked to present oral argument, but there were some limitations on her hearing. And therefore, if I may, I may have to consult with her since she was lead counsel. But at this point, what I'd like to do, if it pleases the court, is respond to some of the questions that the court had posed to the state. We contend that there actually is no evidence that the state attempted to implement the IEP, whether it was the June 2008 version or the October 22, 2008 version, which the district court found was the IEP that purported, according to the state, purported to provide a FAPE. Would you help me on this problem? Yes. How could the department implement the IEP where the mother refused to permit the child to participate in the plan? Could they forcibly remove the child from there? No, Your Honor, we don't contend that they should have done that. Instead, what the state should have done, what the school district here, which is the state in the state, should have done was to determine, to get a determination through the process that is afforded through the IDEA, called the due process hearing, should have obtained a determination of whether whichever IEP we're talking about actually, in fact, provided a FAPE. And what should have happened here was by June of 2008, which would have been four months before the child's Part B services would have automatically terminated, at that point the state knew that mother did not agree with placement. They could have sought a due process hearing at that point, and the state did not. So in your view, whenever the parent comes to this point, you believe it is necessary and that it's the law that the district then must seek a due process hearing? No, Your Honor. In fact, we would contend that no one should be jumping into a due process hearing right away. The flaws in this case actually started with something that's similar to what happened in Union School District v. Smith. In that case, this court observed that the school district did not but should have offered an IEP with a specific placement. And what they did was they did not. Just a minute if I could. My worry is, would you agree with me that what we're really talking about is Section 1412A9? You mean the smooth and effective transition? That's what we're really trying to interpret. Well, Your Honor. Would you agree with that? I agree that that is the focus, and that was the focus of the problem. All right. If that's the focus, then it seems to me that given 1412A9, I have to determine if a valid IEP had been developed and was being implemented. And I guess I'm now back to the same question. I don't see how one could suggest the valid IEP was not developed. Nobody's challenged that. Being implemented, I guess I'm trying to figure out how the school district could have done anything further to implement it than what it had done. Well, for the purposes of this appeal, we have not appealed the validity of the IEP, the substantive propriety of the IEP under the IDEA and Raleigh. That's correct. Therefore, as far as we're concerned for the appeal, the IEP was valid. However, it was not implemented, and to answer, Your Honor. What do you mean it was not implemented? What things were not done to implement it? Nothing. Nothing was done to implement it? Or what things were not done to implement it? Well, there was no finding by the administrative hearing officer and by the district court that anything was done to implement the IEP of any date. And I believe that Judge Wardlaw asked for a citation or some proof of the school bus transportation issue, and we believe that there was a finding with regard to the DOE being willing to provide assistance for the transportation, but no finding that they, in fact, procured the bus or had any system set up. Go ahead. I don't mean to interrupt you, but my worry is that, in my view, the statute does not suggest in this particular situation that the school district has to present evidence that they procured or they've done anything except they've done everything they could to put the plan together and then the mother says no, what else would they do? Well, what they should have done was do what the court has instructed for at least the last 19 years, which is notwithstanding a parent's lack of cooperation, the school district should have moved forward with the implementation of the IEP, but in this case, and they could have, for example, provided services or notified mother that there were services that had begun on November 1st at Kainalu Elementary per the October 22nd IEP, and if she did not show up. Is that the first school or the second school? The Kainalu Elementary is the DOE school, the school that the school district wanted mother to attend to which she objected. She wanted her child to remain at Kailua Elementary. If you would, where is all this 19 years of law that suggests that? I look at Smith. Smith, the school district was blaming the parents because the parents didn't provide information to them, and we said do more, go get your own information. JG, same as Smith. WG can't develop a plan without the private school, and the parents won't get the private school there, and so therefore no good, and we said, hey, you can get the private school there, go ahead. But this is just a little bit different. This is the information has been provided, the plan has been developed, everything has been done except the parent providing the child to put the plan together, and I don't find the case that says in that instance the school district has more responsibility. Well, Your Honor, the Smith case also involved that situation where, like in this case, there was a dispute about placement, and although the context of the dispute arose in the issue of whether the parent should get reimbursed for the unilateral private placement, what this court said was that in response to the school district claiming that it could not have offered a particular school because the parent did not agree to that school, and therefore that was their explanation for why they could not have an IEP with a particular school in mind, this court said that the school district, quote, cannot escape its obligation under the IDEA to offer formally inappropriate educational placement by arguing the disabled child's parents expressed unwillingness to accept that placement. Now, what this court said about it was illuminating. Had the school then, as well as here, made an offer early enough, not October 22nd, but eight days before Part B services were to terminate automatically, had the DOE made its offer earlier, mother, as the court had noted in the Smith case, mother would have been able to basically have been forced to decide, send my child to Kainalu and wait for that bus or not send the child to school or just show up at Kailua and hope that there would be services miraculously applying there or file a due process action. And what happened instead was the school district, notwithstanding having the obligation under the IDEA, it is not the parent's obligation, it is the school district's obligation to provide free appropriate public education, the state did nothing. What this court and this panel has ruled. Am I going to find my answer in Smith then as to what I ought to do in this case? Because in my book, in Smith, they were continually fighting about whether there was an appropriate plan. And they were talking about who had responsibility in putting the plan together. We weren't talking about implementation of the plan. And that's why I don't think Smith is appropriate here. The plan was together. You have not appealed it. As far as I'm concerned, it's valid. So we're only talking about an implementation of the plan. And at that point, it seems to me that if the school district is doing all it can to implement the plan, or at least that's what the record suggests, and the parents are not allowing the implementation, I don't have any law that says in that instance the parents are not responsible. Well, Your Honor, I beg to differ as to the state of the record. There is no finding by the district court or by the administrative hearing officer that the school district here did anything to implement the plan. In fact, the sequence of the findings of administrative hearing officer Miley is that October 22nd was when the IEP that Judge Ezra determined was the FAPE IEP was offered. Then it's silent as to any services. The finding then is that October 30th was when services were automatically terminated. Subsequent to that is a finding that in November, on November 25th, 26 days after services were terminated, that's when the Department of Education started services. Well, that's the state put provision, isn't it? Well, actually, that may have been the attempt to comply with the state put provision, but we contend that the record is showing this court that there was no evidence that and no finding that the school had implemented. And, in fact, we contend that in their briefs they conceded that there was no implementation. What they were arguing was they should be absolved from implementation simply because they want to blame mother. And we say that from target range in 1992 through now, the court has consistently built a jurisprudence that says when, frankly, because the state is the entity, the school district is the entity that has the obligation under the IDEA to provide certain things, they cannot rely on the parents' failures or the parents' lack of cooperation to then excuse themselves from having complied with the law. Well, I understand the case law, and I even understand the holding you're suggesting. But in this particular matter, I don't think there's any case that's really ever gone this far. Whether the plan was put together, nobody's contesting. The plan was in operation for implementation, and the parent says, I won't do it. And then you want me to suggest that the school district either had to go get a due process hearing or do something else in that situation. I don't find the case law that suggests that. In fact, it seems to me the ultimate of your argument is if you're a parent and you don't want to do what's in the IEP plan, then just go do what you want to do, and the school district has to do it anyway. And if they don't do it, then they've got to pay. Even though the parent is the one who's responsible for keeping the child at home. Some parents have acted at their peril, and that's where all the reimbursement cases come from. When there is a circumstance where the parents in the school district do not agree about what is FAPE, they do not have an IEP to which everyone stipulates, the parent decides, I don't like what I see, and then they place their children in private school or another facility, and then they ask for reimbursement under the IDEA. This happens. And so I agree with the court that there isn't a case exactly like this. However, we contend that under the jurisprudence that has been developed, including cases decided by Judge Alarcon and for which Judge Wardlaw was on the panel, as well as you, Judge Smith, that there cannot be a deviation from the obligation placed on the school district to provide a free, appropriate public education. Blaming the parents and saying, well, if you're not going to take this child to the school that we choose, then so be it, we're absolved, is basically an abrogation of the law of their obligation. What we do contend is, and particularly in this case where I do differ with your Honor about the fact that there is no record of implementation, when there is no implementation, and the parent insists on doing it her way, she has a couple of choices. One is she places her child somewhere else. In this case, she did not. In this case, she chose to try to work with the DOE. And if the DOE, because it has the obligation to provide the FAPE, not the parent, the DOE should have gotten a determination about whether or not its position was correct or not correct. Had they either made an IEP that specifically identified, in mother's words, the wrong school, early on, we probably wouldn't be here, or at least not here on this issue. Had the DOE, even after the October 22nd IEP, determined that it was going nowhere, but it still had the obligation to fulfill, it should have filed the due process request, and it did nothing, notwithstanding the statutory obligation, and it required mother to do something, and it should not be that way. Was there evidence that the mother refused to send Sean M. to the second school? Was there evidence that she refused to do that, or what was the state of the record on that? I'm glad that Your Honor brought that up. We do not dispute the statements that are in the state's reply about the fact that there were transcripts, and there was a position stated in mother's closing brief in the due process proceeding that I believe it was counsel who suggested that mother ended up not taking that child to school after October 30th until services resumed in November. Our representation, and it was my representation in the brief, that there was nothing in the record showing that mother refused, was my inartful way of trying to point out to the court, and I do apologize to the court for being inartful and to the appellants for this. My point was that there was no finding. There was no finding that mother refused to cooperate. There was no finding that mother even threatened to not cooperate. There was no finding that mother did not take the child to school. And because no one, the appellants and the appellees, did not object to the lack of the findings, did not claim that A. H. O. Miley should have made that finding, our contention is this Court does not have a factual basis upon which to point to mother and say she should have done something different. It was her fault for the child losing 26 days of services. I see that my time is up. However, if the Court has any other questions. I have a minor one. I'm sorry to take up more time on this. So on page 17, the District Court says that despite all the meetings, DOE failed to come to a conclusion until it's October 22nd, 2008. Is that the IEP that we're to be concerned with? The one that was eight days before the 30th? Yes, Your Honor. That's the one. And my understanding of the record is that that IEP did not actually include the location of the school. If I look at Administrative Hearing Officer Miley's findings, that IEP was silent, or at least his finding is silent as to what school was offered. However, subsequent to that, it was the principal who informed mother that the school was going to be Kainalu, which is the DOE school. I thought the hearing officer held DOE had not failed to provide the FAPE. There was a correct educational placement. The IEP was a correct educational placement. Yes. And that Kainalu, and I don't say these right, Kainalu was the appropriate location. Yes. And that is part of the reason why mother appealed to the District Court level. So, therefore, they did say it would be at that school. Yes. As I understood it. Yes. They did. Ultimately, they did. All he said was the stay put claim was moved. Correct. Because the DOE had already agreed to it. Correct. But I think the question is, to me, what is the significance of the fact that the October 22nd offer of FAPE was seven days before the Part C services were to terminate? We contend that it was very significant, because that was going to make it impossible for the school district to comply with the requirement that a smooth and effective transition be made from the Part B services to the services that were identified in that IEP. It would be virtually, we contend it would be virtually impossible to set that up in seven or eight days. And more importantly, this Court has no record, as far as we know, and we know no finding that there was anything done. So should we send this back, then, to the administrative law judge on that basis? We contend that that's not necessary, because since no party objected to the fact that there was no such finding, then we are settled with that. And we contend that means there was no evidence that can be acted on with regard to anything the State claims now that they might have done. Given the burdens, given the appropriate burden placement in these particular cases, do you think that is a good position for you? Well, frankly, Your Honor, we think that in this circumstance, with this record, that the Court has enough, including what's not there, including the absence of any finding that the State was ready, willing, and able to implement the October 22nd IEP, or, in fact, implemented the October 22nd IEP. And on that record, we contend that this Court should affirm the district court's decision. Because it found two separate violations. One, a failure to implement, and the second one was failure to ensure a smooth and effective transition. Correct. Two separate violations. In this case, they are two. Well, they are two. However, they are arising from one and the same act. Since what happened was there was a 26-day gap of services. You couldn't possibly have a transition if there is no service at all. All right. Any other questions? All right. Thank you, Counsel. Thank you very much. Counsel? It says 20 seconds, but I'll give you a minute or so. Your Honor, if I may address the first question, which I was asked to seek whether or not there was any record on the issue of efforts made to secure transportation for Sean M. I would like to turn your attention to the application that was submitted by the State Defendant's Appellant's Amended Reply Brief with attachments, in particular in the administrative transcript, Volume 3, Page 294, Lines 2 through 25, as well as Page 295, Lines 1 through 13. Are those excerpt citations you're giving me? I believe they are excerpts. The actual excerpts from the transcripts are included in my amended reply brief and is referenced as I had indicated. So it's Page 294 and it's in your reply brief? That is correct. And what was the other section? On Page 295. Okay. And if I can paraphrase, essentially in the transcript that has been included, the principal of Kailua Elementary School was testifying, and she testified that on the June 30, 2008, transition meeting. And if I can emphasize, the actual IEP. I thought the IEP we're concerned with was October 22. The reason, if I may, that is the issue that was addressed by the appellee, as far as with respect to the request for impartial hearing in federal district court. However, I wanted to mention that clearly the evidence shows that, in fact, the initial IEP took place not on October 22, but, in fact, commenced on June 30, 2008. And the reason why it commenced on June 30, 2008 was because the school wanted to ensure that there was a smooth transition of services prior to the cessation of services. And when I say the cessation of services, it is only under Part B, which was the early intervention program. So it wasn't as though Sean M. would be, you know, denied services as of October 30, 2008. So now you're sort of confusing me about this, because wasn't he getting services under Part C at the time of the October 22, not Part B? That is correct. My apologies, Your Honor. As of the time prior to Sean M.'s third birthday, he was receiving services through early intervention. And when October 30, his third birthday, that is when that type, the services under Part C, was terminated. Not that he was not going to be entitled to services. It was just at the point in time when he reached his third birthday, he was no longer going to be eligible for services under the early intervention program. And that is why the school made certain that the initial IEP was going to be held on June 30, 2008, which was, you know, a period of time prior to his third birthday, so that everything in services as well as a smooth transition would be made available for Sean M. so that there would be no disruption upon his third birthday. All right. Counsel, let me just ask you a question. We're talking about compensation for 26 days of services here, and the form of compensation has yet to be determined. Am I right on that, that whether it's in terms of services or, I mean, money certainly isn't going to help with the regression that Sean has suffered, right? So are we talking about compensatory services for 26 days? My understanding is that is the issue. It is compensatory education for 26 days. Is there any way? Have you gone to mediation on this? I mean, services for 26 days, I'm assuming that can't be something the school district necessarily wants to hold back. And that is another issue that has been raised before this court, is the fact that compensatory services were never initially addressed at the request for due process hearing, and therefore should not be now addressed at the district court level for the first time. And that is based on both case laws. But you're not really answering Judge Wardlaw's question. Her question is the issue of compensatory services for this 26-day lapse is what the ultimate argument is about. It seems that the school district would want the young person to have those services in any event to help. Why has there not been any mediation to try to put this problem to sleep based on we're really looking for the betterment of the child? If I may, Your Honor, I think it is twofold. First of all, as far as the school is concerned, the school was more than ready and able to provide the services that were outlined in the series of IEPs that took place for us on June 10th of 2008. And it was parents' refusal to have Sean M. attend the school that prevented him from benefiting educationally from those services. It was not that the Department of Education failed to provide services for Sean M. That was, you know, always made available for the student. And so for that matter... My question is, then, what's the evidence of the refusal? The evidence of refusal... Also included, if I may, Your Honor, in the amended reply brief is excerpts from the transcripts from the administrative proceeding, in particular when Mother Cookie W. was testifying with respect to her refusal to have... On the amended brief, it is found beginning on page 3, and it runs through page 5. And it is referenced as being in transcript volume 1, page 70, as well as on page 78. And in particular, Mother was asked the specific question of whether or not she would be in agreement with having Sean M. attend a different school from her other son. And she said clearly that she did not agree with that placement in another school. Okay. Is that the same as refusal? And also, it went further as far as the questioning for Mother. And her decision was, in her words, every time it came to the decision to put him in Kainalu, my decision was that I did not agree to it. So in that respect... All right. So you never really answered my question or Judge Smith's, but have the parties tried to mediate this at Ninth Circuit mediation? I have not personally been involved in any mediation to that respect on this issue of compensatory education services. No, I have not.  Thank you. Thank you, counsel. Sean M. v. Hamamoto will be submitted.
judges: Alarcon, Wardlaw, Smith N. R.